IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CALVIN GALINDO-GONZALEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v.  ) | Case No. 2:20-cv-2651-JTF-atc |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2255; DENYING A CERTIFICATE OF APPEALABILITY; CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH; DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Before the Court is Petitioner Calvin Galindo-Gonzalez's Motion to Vacate or Set Aside Sentence Pursuant to 28 U.S.C. § 2255, filed on December 10, 2021. (ECF No. 7.) The Government filed its response on June 26, 2024. (ECF No. 23.) For the reasons set forth below, the Petition is **DENIED**.

        **I.**      **FACTUAL BACKGORUND AND PROCEDURAL HISTORY**

**A. Criminal Case No. 18-cr-20037-JTF-2**

On February 15, 2018, a federal grand jury returned an indictment charging Petitioner and his co-defendant with a single count of conspiring to possess methamphetamine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Case No. 2:18-cr-20037-JTF-2, ("Cr.") ECF No. 2.) Pursuant to a written plea agreement, Petitioner appeared before the Court on February 14, 2019 to plead guilty to the sole count in the indictment in exchange for the Government's agreement to (1) recommend that he be sentenced at the low end of the applicable guidelines range, and (2) not object to a finding that Petitioner qualifie[d] under the safety valve provisions of 18

1

U.S.C. § 3553(f) or U.S.S.G. § 5C1.2, *if he complied with the requirements for either provision*. (Cr. ECF No. 58, 1 & 3.)

During the plea colloquy, the Court informed Petitioner that the offense he was pleading guilty to carried a mandatory minimum sentence of 10-years confinement with the Bureau of Prisons. Petitioner answered that he understood. (Cr. ECF No. 111, 17.) Petitioner affirmed that the plea agreement constituted the entire agreement between the parties. (*Id.* at 32.) The Court also explained the safety valve departure, noting that one of its requirements pertained to a defendant's criminal history points, which would be disclosed during the presentence investigation. (*Id.* at 34.) Petitioner informed the Court that he alone made the decision to plead guilty, that he was doing so freely, voluntarily and knowingly, and that he was not forced to do so. (*Id.* at 22.) The Court then accepted his plea of guilty. (*Id.* at 35.)

The probation officer prepared a Presentence Investigation Report ("PSR") and filed the finalized version on May 9, 2019. (Cr. ECF No. 71 (sealed).) Based on the quantity of methamphetamine involved, the PSR set a base offense level of 34. (*Id.* at 8.) Two points were added to that score based on Petitioner's possession of a firearm at his home where the methamphetamine was stored, and three points were deducted based on Petitioner's acceptance of responsibility. (*Id.* at 8-9.) This yielded a total offense level of 33. (*Id.*) Following the publication of the PSR, Probation filed three addendums. (Cr. ECF Nos. 71, 81 & 83.) Relevant here is the second addendum filed on May 2, 2019, which advised the parties that Petitioner had a criminal conviction for driving under the influence. (Cr. ECF No. 81, 1.) Thus, Petitioner knew he had this additional conviction for nearly four months prior to his sentencing in the instant case. The DUI conviction gave Petitioner an additional criminal history point and increased his criminal history

2

category to II. (*Id.*) Based on the information provided above, Petitioner's guideline range was 151-months to 188-months. (*Id.* at 1.)

Petitioner's attorney filed a sentencing memorandum on the same day that the second addendum was filed, voicing no factual objections to the PSR, but raising some objections to the calculations set forth therein. (Cr. ECF No. 82.) Petitioner's attorney agreed with the base offense level but noted that he was unsure if Petitioner was entitled to safety valve relief, and requested a minor role adjudgment. (Cr. ECF No. 82-1.) Despite acknowledging that any departure would be constrained by the applicable 10-year mandatory minimum, Petitioner's attorney requested a fast track departure that would result in an adjusted offense level of 25. (*Id.*) The probation officer's third addendum to the PSR indicated that Petitioner was not eligible for the safety valve adjustment because he had more than one criminal history point; a firearm was possessed in connection with the offense; and because he had not provided the Government all information and evidence that he had concerning the offense. (Cr. ECF No. 83, 1-2.) With respect to the minor role adjustment, the probation officer noted that the facts of the case and Petitioner's acceptance of responsibility statement reflected that the adjustment was inapplicable. (*Id*. at 3.) As for the fast track departure, the probation officer indicated that the Government needed to file a motion for a downward departure pursuant to an authorized early disposition program for Petitioner to be eligible; something the Government did not do in this case. (*Id.*)

Petitioner appeared before the Court on August 29, 2019 for his sentencing. (Cr. ECF No. 88.) At the sentencing, Petitioner's attorney objected to the gun possession enhancement, claiming that it was inapplicable insofar as Petitioner did not possess the gun during the drug transaction. (Cr. ECF No. 95, 7-9.) The Court overruled the objection, finding that Petitioner was being sentenced for his part in the conspiracy to distribute methamphetamine, which included the

3

methamphetamine seized at the residence where the firearm was found. (*Id.* at 8-10.) Petitioner's attorney then noted that the DUI conviction was finalized and acknowledged that this moved him to a criminal history category of II, rendering him ineligible for safety valve relief. (*Id.* at 11.) Last, the Court denied the minor role adjustment request based on the facts of the case. (*Id.* at 12.) Now recognizing that no good deed goes unpunished, the Court varied downward from Petitioner's guideline range of 151-months to 188-months and sentenced him to the statutory mandatory minimum of 120-months incarceration with 5 years of supervised release to follow. (Cr. ECF No. 90.)

### B. Section 2255 Petition

Petitioner filed a timely 28 U.S.C. § 2255(f) petition on the criminal docket on August 25, 2020. (Cr. ECF No. 96). Due to several docketing errors, Petitioner's counsel did not receive notice when the petition was terminated and refiled anew on the civil docket, a standard practice for habeas petitions in this district. (Case No. 20-cv-2651, ECF No. 1). As a consequence, Petitioner's counsel did not receive notice of the Court's September 23, 2020 Order directing counsel to apply for leave to appear *pro hac vice*. (ECF No. 4.) Unsurprisingly, Petitioner did not comply with the order and the case was dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(b) on November 6, 2020. (ECF No. 5.)

Petitioner later brought a motion seeking relief from judgment pursuant to Federal Rule of Civil Procedure 60(b). Given that Petitioner's 28 U.S.C. § 2255(f) petition was dismissed through no fault of his own, the Court granted the motion, and reinstated the habeas petition on April 15, 2024. (ECF No. 17.) On October 1, 2024, the Court discovered that Petitioner's attorney was disbarred in California and ordered him to show cause why his *pro hac vice* admission should not be revoked. (ECF No. 24.) The Court conveyed this information to Petitioner and extended his

deadline to file a reply to the Government's response to November 1, 2024. (ECF No. 25.) Neither Petitioner nor his attorney responded to the Court's orders, and the time to do so has passed.

Petitioner submits that his sentence must be vacated because his plea agreement and sentence were the result of ineffective assistance of counsel. (ECF No. 7, 10-11.) More specifically, Petitioner alleges that during plea negotiations, his counsel misadvised him as to: (1) the actual term of incarceration which he faced; (2) his eligibility for the safety valve downward sentencing departure; and (3) his eligibility for the "fast track" downward sentencing departure. (*Id.* at 13-22.) Petitioner argues that he was prejudiced by his trial counsel's allegedly deficient performance because he would not have entered the plea agreement if he understood what he was agreeing to. (*Id.* at 24-25.)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). Movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

The Sixth Amendment right to effective counsel extends to the plea-bargaining process and is governed by the two-prong *Strickland* test. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)

5

(citing *Missouri v. Frye*, 566 U.S. 133, 140-41 (2012)); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). To establish constitutionally ineffective assistance in the plea-bargaining process, the movant must show not only that counsel was deficient, but that the outcome of the plea process would have been different with competent advice. *Id.* There is a strong presumption that counsel's performance falls within the "wide range of professional assistance" and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689, 690; *see also United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995) ("We presume from the outset that a lawyer is competent, and therefore, the burden rests on the accused to demonstrate a constitutional violation." (citation omitted)). The petitioner must prove his allegation that his lawyer was constitutionally ineffective by a preponderance of the evidence. *Pough*, 442 F.3d at 964 (citing *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003)). A court evaluating an ineffective assistance claim does not need to address the *Strickland* components in order "or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." *Lee v. United States*, 582 U.S. 357, 368–69 (2017) (internal quotation marks and citations omitted). "Where [] a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To be effective, counsel must inform his client of available options and "explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Smith v. United States*, 348 F. 3d 545, 552-53 (6th Cir. 2003) (citation omitted). A lawyer's performance would be deficient if "counsel did not

6

attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence." *Pough*, 442 F.3d at 966 (quoting *United States v. Cieslowski*, 410 F.3d 353, 358–59 (7th Cir. 2005)).

## III.     ANALYSIS

To reiterate, Petitioner contends that counsel was ineffective for misadvising him about: (1) the actual term of incarceration he faced; (2) his eligibility for the safety valve downward departure; and (3) his eligibility for the "fast track" downward sentencing departure. (ECF No. 7, 13-22.) He argues that these deficiencies prejudiced him because he would not have accepted the plea agreement if he were properly advised. (*Id.* at 24-25.) The Court considers claims (1) and (2) together before turning to claim (3).[1]

### A. Failure to Adequately Inform Petitioner about Sentencing Exposure and Eligibility for Safety Valve Relief

Petitioner first argues that trial counsel misadvised him about the actual term of imprisonment that he faced when trial counsel allegedly informed Petitioner that he would be sentenced to only four years in prison. (ECF No. 7, 13-14.) Relatedly, Petitioner contends that counsel was ineffective in wrongly advising him that he was eligible for safety valve relief. (ECF No. 7, 18-19.) The Government contends that Rivas's affidavit is more consistent with the record, and that Petitioner's argument that he was misadvised about his sentencing exposure and eligibility for safety valve relief is foreclosed by his representations during the plea colloquy. (ECF No. 23, 9.)

In trial counsel Mario Rivas's affidavit, he explains that he told Petitioner multiple times that the crime carried a mandatory minimum sentence of 10 years confinement, and that probation had

---

[1] Because Petitioner's representations at the plea colloquy foreclose the arguments he makes here, the Court does not consider whether Petitioner was prejudiced by the alleged ineffective assistance of counsel. *See Strickland*, 466 U.S. at 697.

7

not identified any reasons warranting a departure from that minimum but were instead recommending 135-months. (ECF No. 23-1, 2-3.) As for the availability of safety valve relief, Rivas states that he told Petitioner in their initial meeting that he could not give a firm answer until he conducted discovery and investigated Petitioner's record. (*Id.* at 2.) He maintains that he did not tell Petitioner that he was eligible for safety valve relief when they discussed the plea agreement because of his prior convictions and what was thought at the time to be a pending DUI case.[2] (*Id.* at 3.) Once the probation officer filed the second addendum identifying an actual DUI conviction, Rivas explained to Petitioner that his criminal history score was now II, meaning that his guideline range was now 151 to 188 months, and he was no longer eligible for safety valve relief. (*Id.* at 3-4.)

In the Sixth Circuit, a defendant is bound by his statements made in response to the Court's inquiry, even if his counsel's advice was erroneous. *See United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) (citing *Ewing v. United States*, 651 Fed.Appx. 405, 410 (6th Cir. 2016)). "Otherwise, the plea colloquy process would be rendered meaningless if a defendant could reopen the record by later asserting that actually, he misunderstood." *Id.* (citing *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999)).

A review of the plea colloquy in this case clearly shows that the Court informed Petitioner he was pleading guilty to an offense that carried a mandatory minimum sentence of 10 years. (Cr. ECF No. 111, 17.) Petitioner responded that he understood. (*Id.*) He also affirmed that the plea agreement constituted the entire agreement between the parties, and that no one had made any other promises to him. (*Id.* at 22.) Petitioner represented to the Court that that he alone made the

---

[2] The record shows that Petitioner pled guilty on February 14, 2019, and was sentenced on August 29, 2019. (Cr. ECF Nos. 57 & 89.) However, on May 2, 2019, Petitioner was convicted of Driving with .08% BAC in the Superior Court in California, which was nearly four months prior to sentencing in the instant case. (Cr. ECF No. 81.)

decision to plead guilty, that he was doing so freely and voluntarily, and that he was not forced to do so. (*Id.* at 22, 32.) The Court also explained the safety valve departure, noting that one of the requirements for this departure pertained to his criminal history, which would be provided in the presentence investigation report. (*Id*. at 34.)

Petitioner was informed via the indictment, plea agreement—which he confirmed he had read—and the Court during the plea colloquy that he was pleading guilty to an offense that carried a mandatory minimum of 10-years. The record clearly demonstrates that Petitioner was repeatedly informed of his minimum sentencing exposure as well as the eligibility criteria for safety valve relief; he acknowledged his understanding of what he was pleading guilty to, and what the consequences for pleading guilty would be. Despite this, he now claims that he was under the impression that he would only receive a 4-year sentence, well below the guideline range and mandatory minimum. The Court finds no support for Petitioner's contention that he was misadvised as to his sentencing exposure and eligibility for safety valve relief. Accordingly, claims 1 and 2 are **DENIED**.

**B.  Failure to Advise as to Eligibility for Fast Track Relief**

Petitioner contends that trial counsel misadvised him that he was eligible for the fast track sentencing departure, which is only available upon motion of the Government pursuant to an early disposition program. (ECF No. 7, 20); *see* U.S.S.G. § 5K3.1. Once again, Rivas's affidavit is at odds with Petitioner's account. Rivas indicated knowledge of the existence of a fast track sentencing departure possibility at the beginning of the case; however, he never made any representations that Petitioner was eligible for a fast track departure. In fact, as the case progressed, no documentation materialized to support Petitioner's eligibility for a fast track departure. (Cr. ECF No. 23-1, 4.)

9

Petitioner's claim that he was misadvised about his eligibility for a fast track departure is also foreclosed by the Court's plea colloquy. *See Pola*, 703 F. App'x at 423. The colloquy established *inter alia* that Petitioner was facing a mandatory minimum sentence of 10-years confinement, that his desire to plead guilty was not conditioned on any collateral promises or agreements not memorialized in the plea agreement, and that he freely, voluntarily and knowingly entered into the agreement. (Cr. ECF No. 111, 17-22.).

The plea agreement makes no mention of any fast track departure, and the Court finds no support for Petitioner's self-serving claim that Rivas gave him the impression that he would receive that departure at sentencing. Accordingly, claim 3 is **DENIED**.

## C. Appeal Issues

28 U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). No § 2255 petitioner may appeal without this certificate.

A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).

> Where a district court has rejected a constitutional claim on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists

10

of reason would find it debatable whether the district court was correct in its procedural ruling. . . .

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020). "To put it simply, a claim does not merit a certificate unless every independent reason to deny the claim is reasonably debatable." *Id.*; *see also id.* ("Again, a certificate is improper if any outcome-determinative issue is not reasonably debatable.").

There can be no question that the issues raised in Petitioner's § 2255 Petition are meritless for the reasons previously stated. The Court therefore **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file her motion to proceed in forma pauperis in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court also determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is **DENIED.**

## IV.  CONCLUSION

Consistent with the foregoing, Petitioner's § 2255 Petition is **DENIED** on all three grounds set forth therein. The Court also **DENIES** a certificate of appealability and **CERTIFIES** that an appeal would not be taken in good faith.

**IT IS SO ORDERED**, this 15th day of November, 2024.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
United States District Judge
